# ORIGINAL

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION



FILED
U.S. DIST. COURT

FEB 3 4 ... TM '01

CL... N. Suttive

| | | |
|---|---|---|
| **KEITH LONDON** | ) | **CV400-282** |
| | ) | **(underlying CR497-181)** |
| v. | ) | **appeal no. 98-8154** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |

### GOVERNMENT'S RESPONSE TO LONDON'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO LONDON'S 28 U.S.C. § 2255 MOTION

COMES NOW the United States of America, by and through Harry D. Dixon, Jr., United States Attorney for the Southern District of Georgia, and responds to London's "Reply to Government's Opposition Motion Pursuant to 28 U.S.C. § 2255." London, at page 1 of his reply, contends that the government erroneously stated in its response in opposition to London's § 2255 motion that London raised on direct appeal the issue of the Court's drug quantity attribution figure at sentencing. For clarity's sake, the government attaches hereto a copy of London's appeal brief. The sentence entrapment/sentencing manipulation argument of London's brief clearly contains a challenge to the Court's drug attribution figure at sentencing. See London's brief, pp. 22-25.

WHEREFORE, the government respectfully requests that this Court issue an Order denying London's 28 U.S.C. § 2255 motion, as amended, and for such other relief the Court deems appropriate in this case.

Respectfully submitted,

HARRY D. DIXON, JR.
UNITED STATES ATTORNEY

Carlton R. Bourne, Jr.
Assistant United States Attorney
SC Bar No. 007868

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

KEITH LONDON

Appellant,

v.

UNITED STATES OF AMERICA

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

BRIEF OF APPELLANT

Attorneys for Appellant:

Harry B. James, III
407 Sixth Street
Augusta, Georgia 30901
Telephone: (706) 722-2611
Facsimile: (706) 724-5952

Randolph Frails
505 Courthouse Lane
Augusta, Georgia 30901
Telephone: (706) 828-0075
Facsimile: (706) 828-0093

# I.    CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellant Keith London, in compliance with Rule 26.1 of the Federal rules of Appellate Procedure and with Rule 26 1-1 of the Rules of the Eleventh Circuit United States Court of Appeals, certify that the following listed persons and parties have an interest in the outcome of this case  The representation are made so that the Judges of this Court may evaluate possible disqualifications or refusal pursuant to the local rules of court:

1. The Honorable B  Avant Edenfield, United States District Judge, United States District Court for the Southern District of Georgia;

2. Mr. Harry B. James, III, Counsel for Keith London;

3  Mr  Randolph Frails, Co-Counsel for Keith London,

4. Mr  Charles Bourne, Assistant United States Attorney, United States Department of Justice;

5. Ms. Kathryn Aldridge, Assistant United States Attorney, United States Department of Justice;

6. Mr. Keith London, Defendant-Appellant;

7  Mr. Teddy Solomon, Trial Counsel for Appellant;

8. The United States of America, Appellee

This ___18th___ day of December, 1998.

Harry B. James, III
Counsel for Appellant
State Bar Number 388787

407 Sixth Street
Augusta, Georgia 30901
Telephone   (706) 722-2611
Facsimile.   (706) 724-5952

Randolph Frails
Counsel for Appellant
State Bar Number 272729

505 Courthouse Lane
Augusta, Georgia 30901
Telephone:  (706) 828-0075
Facsimile.   (706) 828-0093

## II. STATEMENT REGARDING ORAL ARGUMENT

Counsel for Appellant hereby informs this Court that oral argument is not desired.

## III. CERTIFICATE OF TYPE SIZE AND STYLE

Pursuant to 11th Cir. R. 28-2 (d), Appellant's Brief is 12 point Times New Roman.

# IV. TABLE OF CONTENTS AND CITATIONS

I.      CERTIFICATE OF INTERESTED PERSONS  ... ... ..... ... .. .. .. .. ... .. ..i

II.     STATEMENT REGARDING ORAL ARGUMENT... ..... .. . .... ... ....... .. ii

III.    CERTIFICATE OF TYPE SIZE AND STYLE .. .... .. . .... ..... ... ... ... .... iii

IV      TABLE OF CONTENTS AND CITATIONS. .... . ... .. ...... .... ..... .... ...iv

IV      STATEMENT OF JURISDICTION . ............ ... .... ..... . .. .... ..... . .. ...........1

V.      STATEMENT OF THE ISSUES.. ....... .. ; .. ..... ...... .. ..... .. .. .. .... .. 2

VI.     STATEMENT OF THE CASE..... ..... .. . ... ..... .. .. ..... .. .. ..... .. 3

        A.      Course of Proceedings and Dispositions in the Court below... .... .. ..3

        B       Statement of the Facts.... ..... .... .... .. .. ... .. .. .. .. .. ... . . 4

        C.      Standards of Review..... ... . .... ... ..... .... . ..... .. .. .... ... .. ... ... . . 7

VII.    SUMMARY OF THE ARGUMENT .... . .. ... . . ......... .. .. ... .. .. ... .8

VIII    ARGUMENT AND CITATIONS OF AUTHORITIES.... ... ..... . ... ... .. 9

        A       Appellant, Keith London's, conviction should be reversed because there
was insufficient evidence to prove beyond a reasonable doubt that Appellant was a
member of the conspiracy

        B.      The District Court erred in denying Appellant's motion for a downward
departure based on sentencing entrapment/manipulation.......... ............ . . ........... ......18

iv

C.     *Trial Counsel rendered ineffective assistance of counsel by failing to raise the issue that Appellant was entitled to a downward sentence adjustment pursuant to* U.S.S.G § 3B.1.2 and U.S.S.G. § 3E.1.. ............ ... ............ .......... ....................... ..25

IX.    CONCLUSION . . ...... .................... ... ... ....... . ......... .... ......... ....... ....30

X.     CERTIFICATE OF SERVICE......... . . ... ... . ........ . .,. ..... .. ......... ........ ..31

## IV.    STATEMENT OF JURISDICTION

*The Appellant invokes this Court's jurisdiction pursuant to 28 U S C § 1291.*

## V.    STATEMENT OF THE ISSUES

### (1)

Whether Appellant, Keith London's, conviction should be reversed because there was insufficient evidence to prove beyond a reasonable doubt that Appellant was a member of the conspiracy.

### (2)

Whether the District Court erred in denying Defendant London's request for a downward departure based on sentencing entrapment/manipulation.

### (3)

Whether the Appellant was denied to effective assistance of counsel due to trial counsel's failure to request a downward sentence adjustment pursuant to U.S S.G § 3B.1.2, and failure to raise the issue of a downward departure under U.S.S G. § 3E.1.

2

## VI.   STATEMENT OF THE CASE

A.   Course of Proceedings and Dispositions in the Court below.

Appellant Keith London was indicted on four counts of conspiracy to aid and abet

the distribution of cocaine in violation of Title 21, § 841 (a) (1) and Title 18, of the United

States Code, § 2.   (R-1).   Appellant entered a not guilty plea to each count.  Appellant

was tried by a jury in the United States District Court for the Southern District of Georgia,

the Honorable B  Avant Edenfield, presiding.  Appellant was convicted on all counts.

Judgment and sentence were entered on January 29, 1998, pursuant to which appellant

was sentenced to serve two hundred and six months (206) as to each count, to run

concurrently, followed by a term of supervised release for a term of five (5) years on each

count to run concurrently, and a one hundred dollar ($100.00) special assessment on each

count, total of four hundred dollars ($400.00).   (R-236).

Appellant filed a timely notice of appeal to this Honorable Court where his case is

now pending.

**Appellant is currently incarcerated.**

B.    STATEMENT OF THE FACTS

In late 1994, the Federal Bureau of Investigation began receiving information from various sources regarding corruption that existed in the Savannah Police Department. It included police officers giving tips on information to drug dealers. (T. 38-39) An investigation was initiated by the FBI in conjunction with other agencies including the Georgia Bureau of Investigation and the Counter Narcotics Team, which included officers from surrounding municipalities. (T.38). The investigation utilized a cooperating witness named Walter Heyward, a convicted drug dealer. (T 40-41). In 1995 Informant Heyward contacted the FBI concerning corruption of police officers and based upon the information the FBI began an active investigation. (T.43). The initial investigation led to officer Tommy Bryant engaging in escort services for drug couriers from locations outside of Savannah to the downtown area. (T. 45-46). Later the government introduced FBI undercover agents into the investigation  The agents posed as drug dealers from Miami, who desired to move narcotics and store drugs in Savannah to be picked up by couriers. The undercover agents and cooperating witness were equipped with recording devices (T. 49-50). Videotapes were utilized during the undercover operation. (T.51). Between 560-570 audio and videotapes were made of conversations and the activities of the defendants. (T.94).

Keith Coleman, a co-defendant at trial with Appellant, was introduced into the scenarios by Tommy Bryant. (T. 158). The undercover agent initially met with

4

Mr. Coleman on November 14, 1996. (T. 175). In the taped conversation the agent insisted "Everybody got to know it's dope", however Mr. Coleman who recruited Appellant into the scenario stated "Don't tell them". (T. 186).

On November 20, 1996, Appellant along with two other police officers provided a security escort for an undercover agent from Dean Forest Road in Savannah, Georgia to the Marriott Hotel and an escort back to Interstate 95. (T. 194-195). All negotiations for payment were handled by Keith Coleman, through the cooperating witness and an undercover agent. All statements regarding what appellant was willing to do were also made by Keith Coleman (T. 215-227).

Appellant in the scenarios was charged specifically with providing security and protection for individuals engaged in transporting or distributing cocaine in or around the Savannah, Georgia area, on the following dates: (1) November 20, 1996, (2) December 10, 1996, and (3) January 30, 1997. The government chose the amount of drugs to be involved and also used fictious cocaine. (T. 69-70).

A trial ensued and the jury returned a verdict on November 21, 1997. At trial several government undercover agents testified to Appellants activities, however the witnesses were unable to show that Appellant was aware that he was escorting shipments of cocaine, or that he knew of the conspiracy and intended to join it.

Appellant London was found guilty of Counts 1, 5, 6, and 9 of the indictment charging him with a conspiracy to aid and abet the distribution of cocaine in violation of

21 U.S.C § 846, and an attempt to aid and abet the distribution of cocaine in violation of Title 21 of U.S.CT. § 846

Appellant's sentencing hearing was held on January 28, 1998 with the Honorable B. Avant Edenfield, presiding. Prior to the sentencing hearing trial counsel made two objections to the presentence report prepared by Probation Officer Ricky Long. (T. 4). During cross-examination of Mr. Long, trial counsel examined him regarding his statement under oath that Appellant rented a car and came back from Florida to do a deal. (T. 5). During cross-examination the government's witness admitted that he had no basis for such a statement (T 5-7).

Mr Long was also examined on the amount of the cocaine used in the scenarios and the imputed knowledge of Appellant. Mr. Long admitted; (1) appellant was assessed with 4.7 kilos on each occasion, including the occasion when nothing was transported; (2) Appellant was never shown any quantity of cocaine, (T. 7); (3) and that other than the fact the investigation involved 4 7 kilo's of real cocaine there is no evidence that Appellant knew same, (T. 8); and (4) that Mr. Long didn't have any basis for the foreseeability of (kilo's of cocaine) to be assessed against the Appellant than four to 30. (T. 8-9). Based upon the answers of the government's witness trial counsel moved for sentencing based upon an offense level lower than requested by the government, however the Court found the sum, and quantity as alleged by the government to reasonable and foreseeable as to the guidelines application. (T. 110-15).

6

C.    Standard of Review

(a)

In determining whether Appellant's conviction for conspiracy should be reversed, this Court must determine whether when viewing the evidence in the light most favorable to the government, the jury necessarily must have entertained a reasonable doubt concerning the guilt of Appellant.   United States v Clavis, 977 F.2d 538 (11th Cir. 1992).

(b)

In determining whether Appellant's sentence should be reversed, this court must determine whether the District Court erred by denying Appellant's request for Downward Departure based on sentencing/manipulation pursuant to Koon v. United States, 116 S.CT 2035 (1996).

(c)

In determining whether Appellant sentence should be vacated, this court must determine whether the Appellant was denied effective assistance of counsel when counsel failed to request a downward sentence adjustment pursuant to U.S S.G. § 3B.1.2., and a downward departure pursuant to U.S.S.G. § 3E.1, under the Sentencing Guidelines

## VII. SUMMARY OF THE ARGUMENT

### (A)

Appellant contends that the evidence as a matter of law, failed to establish that he was a member of the drug conspiracy as alleged in the indictment. Viewed as a whole, the evidence presented by the government did not establish beyond a reasonable doubt that the Appellant knew of the conspiratorial goal and voluntarily participated in helping to accomplish the goal.

### (B)

Appellant also argues that the District Court failure to grant Appellants request for a downward departure based on sentencing entrapment/manipulation was error in view of the fact scenarios in this case, including the government determination as to the amount of drugs that would be attributed to Appellant for sentencing purposes.

### (C)

Appellant also contends that trial counsel's failure to properly raise the issue that Appellant London was entitled to a downward sentence adjustment pursuant to U S.S.G. § 3B.1.2 as a minimal or minor participant and failure to raise the issue of a downward departure under U.S.S.G. § 3E.1 under the Sentencing Guidelines rendered Counsel's assistance constitutionally ineffective.

## VIII.   ARGUMENT AND CITATION TO AUTHORITY

A    **AS A MATTER OF LAW, THE GOVERNMENT'S EVIDENCE FAILED TO ESTABLISH THAT APPELLANT KEITH LONDON WAS A MEMBER OF THE  DRUG CONSPIRACY AND WAS AWARE OF THE UNLAWFUL ACTIVITIES LEADING TO HIS INDICTMENT, THEREFORE, HIS CONVICTION SHOULD BE REVERSED.**

There was insufficient evidence to prove beyond a reasonable doubt that appellant

Keith London was a member of a conspiracy   Appellant did not intentionally attempt to

aid and abet the distribution of cocaine by escorting shipments of cocaine and/or by

guarding and providing security and protection for individuals engage in transporting or

distributing cocaine in or around the Savannah, Georgia area.  The evidence at trial

established that Appellant participated in providing escort services, however, the evidence

did not establish beyond a reasonable doubt that Appellant knew that he was escorting and

providing security for shipments of cocaine.

Appellant asserts that he was convicted based upon evidence introduced at trial

that clearly established his co-defendants knowingly aided and abetted the distribution of

cocaine during the times he associated with them for the purposes of providing escort and

security for items other than illegal narcotics   In United States v. Guerra-Marez, 928

F 2d. 665, 674 (5th Cir  1991), the standard for such a conspiracy prosecution is well

established.  In order to sustain a conviction in a conspiracy prosecution, the government

must prove beyond a reasonable doubt, (1) the existence of an agreement between two or

9

more persons to violate the narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy. See also, United States v Lee, 695 F 2d 515 (11th Cir. 1983).

In its investigation of Keith London the government, in its day to day undercover operation using organized scenarios was charged with the task of identifying corrupt police officers within the Savannah Police Department (T.1037), or other law enforcement agencies in the Savannah area beginning in November 1995. (T 76) The government primarily used a convicted drug felon as a cooperating informant named Walter Heyward. Mr. Heyward was paid approximately $63,000 00 for his services (T 64) Additionally, a bonus of $15,000.00 from the Chatham County Narcotics Team, along with additional bonuses (T.99) The government chose the amount of drugs to be involved and used fictitious cocaine on numerous occasions (T 69-70). During the investigation approximately 560 to 570 video and audio tapes were made (T 94)

In considering the sufficiency of the evidence against Keith London, the evidence produced at trial was not sufficient for a reasonable jury to conclude that he was involved in a conspiracy The government's witness Anthony Velazquez, Special Agent with the Federal Bureau of Investigation, served in an undercover role under the alias Antonio Lopez. (T.143). Agent Velazquez was directly involved in dropping off and picking up cash for the cocaine and transporting same to a warehouse, the Marriott Riverfront Hotel in downtown Savannah and other locations in the Savannah area. (T.152). During cross-

10

examination agent Velazquez, admitted that he never talked to Mr London, (T.344), never witnessed a payment to Mr. London, (T 347), nor did he have any knowledge of Mr. London watching a safe. (T. 353).

Another government witness whose testimony failed to establish that Appellant knew he was escorting cocaine was Special Agent Gina Davis, who served as a courier in one of the undercover scenarios. Her assignment was to drop off and pick up a silver brief case from a hotel. (T. 366). On November 20, 1997, Mr London in participation with others was to provide an escort for her  The agent admitted on cross-examination that the participants involvement was no more than driving in front and back of her unmarked car. (T 393)  They didn't have on any badges nor uniforms (T. 394).  Additionally, she testified Mr London never looked inside her vehicle, nor did he look inside any container she had  (T  402).

Special Agent Robert McAllister who served as the co-case agent in the investigation testified in response to a question posed that another case agent was not telling the truth when she testified "that it wasn't part of the plan to show this cocaine to anybody"  (T 908).  The agent further testified that "no cocaine was shown to Keith London to his knowledge", nor was any money to his knowledge.  (T  909).

In fact, at no time did the undercover agents show any drugs to Appellant, although normally the amount used was 4.7 kilos, and at no time during the scenario did

11

the agents or informant mention to Appellant that he was involved in cocaine. Agent Gina Davis who served as a courier responding to the question. (T 70).

Q: "So, they didn't know what you had, did they?

A· "I don't know what they thought" (T. 392).

Agent Davis further testified that she could not recall any specific conversation with Mr London. (T 401)

All of the scenarios were clearly orchestrated by the government's informant Walter Heyward and defendant Keith Coleman 'The audios·and videotapes were primarily of conversation between these two principles Appellant London's minuscule conversations on a few of the tapes are insufficient at best to impute knowledge of a conspiracy In United States v Sarro, 742 F.2d 1286 (11th Cir. 1984), the court in reviewing several activities of the defendant stated, the use of "uh-huh, uh-huh, aw-haw, yep conversation was insufficient to sustain findings necessary for conspiracy conviction that defendant intended to join and actually participate in conspiracy". It was Keith Coleman who labeled Appellant London as a willing, knowledgeable participant in the scenarios to provide security and escort services for cocaine shipments.

During the trial of the instant case, the confidential informant, was questioned in regards to his knowledge of the involvement of Keith London. (T. 720-21). The following questions were asked, and the informant responded accordingly

Q· You had Mr. London in the apartment, you never did take out any of this stuff in front of him;, did you?

12

| | |
|---|---|
| A: | No, sir |
| Q· | You could have if you wanted to, couldn't you? |
| A: | Yes, sir |
| Q: | But, you didn't? |
| A: | No, sir. |
| Q: | And you never saw him with his hands on or even near dope, did you? |
| A | No, sir |
| Q· | You never saw any dope in any car or vehicle ISUZU he drove, did you? |
| A. | No, sir. |
| Q: | He didn't drive you all over town in a police car; did he? |
| A | No, sir |
| Q | He didn't drive you at all, did he? |
| A | No, sir |
| Q. | You didn't weight it in front of him? |
| A | No, sir. |
| Q: | You never saw anybody give him any money? |
| A: | No, sir |
| Q. | And when you were first introduced to him, if I understand it right, you had never heard that name before; had you? |
| A. | I never met Keith London. I didn't know nothing about him. |
| Q· | Never heard his name, had you? |
| A | I never heard his name till Keith Coleman introduced him to me, sir |
| Q | And all you know about requirement one, that is that they have done something wrong before, all you know about that is what Keith Coleman told you, didn't you? |
| A· | Yes, sir |

The government's heavy burden in proving Appellant's membership in the conspiracy was not established beyond a reasonable doubt through their chief witness. The testimony did not show that Appellant "knew of the conspiratorial goal and that he voluntarily participated in helping to accomplish the goal." See, United States v Brown, 872 F.2d 385, 391 (11th Cir. 1989) "Conspiratorial intent cannot exist without knowledge and evidence of knowledge must be clear and unequivocal" United States v.

13

<u>Hernandez</u>, 896 F 2d 513, 519 (11th Cir. 1990). No such intent or knowledge was shown. Co-defendant Keith Coleman in conversations with the informant alleged the activities Appellant would participate in; and alledged the amount of money Appellant wanted to be paid for escort and security services (T. 215 - 222).

A careful review of defendant Coleman's testimony indicates Appellant London was unwittingly drawn into the illegal activities through outright deception by Coleman and the government's informant If he was guilty of anything it was of being to naive and overly trusting of his friend Mr Coleman whom he met at the police academy. (T 1110). It was the government's informant who approached Mr. Coleman about performing off duty work for him (T 1098-1100). The informant told Mr Coleman that he had a business transferring money, not dope. (T. 1103). The informant also showed Mr. Coleman a briefcase of money apparently to snare him into the government's trap and to prove that illegal narcotics were not the subject matter of the scenarios The government's informant purposely overstepped his authority by encouraging an unsuspecting and naive rookie police officer to lure his friends who were also rookie police officers into the scenarios The testimony of Mr. Coleman indicated that, although he was initially shown money he was told not to use the word "money" but instead to use the word dope. (T.1109-1110). The informant also requested Coleman to recruit his friends but not to tell them it was money and Heyward's explanation for such a deception' according to Coleman's testimony was as follows:

14

> "I can't risk that, because police officers has a certain liability and they can get away if I got this money."
>
> "They can, they can take the money and disburse money, and I can't retract it or even arrest, or even report it, because who gone find the money?"
>
> "Now, by telling them it's dope, they don't know how to get dope, because they are rookies and you have got to get a veteran to know how to get rid of dope " (T 1111)

Clearly the government engaged in misconduct by falsely misleading the participants through trickery and artful means into believing they were to escort money  The government through its agent mislead Appellant London into becoming an unwilling participant in providing escort services for narcotics.  Due to the government's conduct London's conspiracy conviction is unwarranted.  The government was not able to prove beyond a reasonable doubt that (1) Mr London had an agreement with others to violate the narcotics laws, when in fact he was unaware the off duty work involved narcotics

Arguably, Mr London might have been aware that his activities were illegal, however the mere knowledge of illegal activity, even in conjunction with participation in a small part of the conspiracy, does not by itself establish that the person joined the grand conspiracy  There must be a shared objective joining the spokes of the wheel. United States v Evans, 970 F.2d 663 (10th Cir 1992).  Furthermore, evidence that a defendant associated with members of a drug conspiracy and members of the conspiracy speculated that the defendant might be a member of the conspiracy is insufficient to support a conspiracy verdict United States v. Skillern, 947 F.2d 1268 (5th Cir. 1991)

In the instant case, in order for the government to uphold convictions against the sufficiency of the evidence challenged, the government must show that Appellant had knowledge that the transported packages contained cocaine. No such evidence or knowledge was shown, nor did the evidence indicate that Mr. London exercised any dominion or control over the packages while the cocaine was being transported by the undercover agents. Thus the evidence as to him was insufficient to support his conviction. In Hernadez, supra, the Court using the standard of review for sufficiency of the evidence cited in United States v Poole, 878 F.2d 1389, 1391 (11th Cir 1989), reversed the narcotics conviction based upon similar facts as in this case, (1) There was no showing by the government that defendant exercised any dominion or control over the package of cocaine or that he had any uninvoked power or right to do so, (2) Defendant did not own or control the car that contained the cocaine, and (3) It was debatable whether defendant knew that the package contained cocaine, given that, on the facts in evidence, he had no contact with or sight of the package

In Sarro, supra, the enumerated language is interesting, "close association with conspirator or mere presence at scene of crime is insufficient evidence of knowing participation in conspiracy". "Government may not prove up a drug conspiracy merely by presenting evidence placing defendant in a climate of activity that reeks of something foul". United States v Maltos, 985 F.2d 743 (5th Cir. 1992). In Maltos, the facts that led to reversal of the defendants conviction were similar to the instant case. As in Maltos, the

16

evidence revealed the defendant associated with individuals engaged in the transportation of cocaine and was present during the transport of two shipments of contraband. The court ruled however, the evidence was insufficient and held that the, "government failed to prove defendant knew of or intentionally participated in conspiracy or that his association with conspirators went beyond presence at scene of criminal activity or innocent association with conspirators, there was no evidence that defendant knew content of myriad phone calls codefendants placed from public phones, or that his own conversations, by phone or during meals with codefendant, concerned drug transactions, and no evidence that defendant knew contents of cars he was transporting or that they contained contraband at time he was transporting them".

The government placed great significance in the presentation of its case the fact that Appellant London drove his personal vehicle either in the front or back of the undercover agents while they were transporting cocaine or fictious cocaine  In spite of the evidence presented, the government was unable to show that Mr  London was aware of the contents contained in the undercover agents' vehicles. In United States v  Glasgow, III,  658 F 2d 1036 (5th Cir. 1981), the court in reviewing the evidence in the light most favorable to the government reversed the defendant's conviction in part due to the government's failure to prove defendant's knowing participation in conspiracy where government presented no evidence that defendant was aware of contents of rear of van.  

17

As in Glasgow, III, supra, the government could not show that Appellant London was aware of the contents in the undercover agent's vehicles

A conviction must be reversed if there is a basis to conclude that a reasonable jury must necessarily entertain a reasonable doubt as to the guilt of the defendant. Appellant Keith London's conviction in this case should be reversed in light of the above and foregoing arguments and citations of authority demonstrating that he was not knowledgeable of the unlawful activities leading to his indictment

**B.      THE DISTRICT COURT ERRED IN DENYING DEFENDANT LONDON'S MOTION FOR A DOWNWARD DEPARTURE BASED ON SENTENCING ENTRAPMENT/MANIPULATION**

Counsel is aware that this Circuit rejects the theory of sentencing entrapment or sentencing manipulation as a matter of law. United States v Miller, 71 F.3d 813, 818 (11th Cir 1996)  As panels of this Circuit have stated  "as a matter of law, we reject [defendant's] sentence entrapment theory" United States v Williams, 954 F 2d 668, 673 (11th Cir 1992), See also United States v Markovic, 911 F 2d 613, 616 (11th Cir. 1990) (sentence entrapment is no longer a viable defense)

All of these cases, however, were decided prior to Koon v. United States, 116 S.Ct. 2035, 135 L.E 2d 392 (1996). In Koon, the Supreme court set forth the analysis for deciding whether to depart from an applicable guideline sentence.  Specifically, in deciding whether to depart from a guideline sentence the district court should consider·

(1) What features of this case, potentially take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?

(2) Has the Commission forbidden departures based on those features?

(3) If not, has the Commission encouraged departures based on those features?

(4) If not, has the Commission discouraged departures based on those features?

In Koon, 116 S Ct the court at 2045 (quoting United States v Rivera, 994 F.2d 942, 949 (1st Cir 1993) makes it clear that only those factors which the Sentencing Commission has forbidden cannot provide an appropriate basis for departure. All other factors may potentially provide a basis for departure under appropriate circumstances Id

The factor of sentencing entrapment/manipulation is not forbidden by the sentencing guidelines Indeed, Application Note 15 to U S S G § 2D1 1 authorizes a downward departure on a sentencing entrapment theory involving a "reverse sting" operation where the undercover agent sells drugs at substantially below market value The Sentencing Guidelines are silent as to other fact scenarios that may constitute sentencing entrapment or sentencing manipulation Accordingly, Williams, Markovic and its progeny have been implicitly overruled by Koon

If this Circuit were to recognize the doctrine of sentencing entrapment or sentencing manipulation, its decision would be consistent with that of other circuits The First, Eight and Ninth Circuits have explicitly recognized and applied the sentencing

19

entrapment/manipulation doctrine   In <u>United States v. Lenfesty</u>, 923 F. 2d 1293 (8th Cir. 1991), a co-defendant claimed that she received an improper sentence because the federal agent engaged in sentencing entrapment.  The defendant claimed that the agent repeatedly purchased drugs from her for the sole purpose of increasing the quantity of drugs involved in the conspiracy and, thus, increasing her sentence.  Although the claim in <u>Lenfesty</u> was ultimately rejected, the court stated, "[w]e are not prepared to say there is no such anomaly as 'sentencing entrapment' where outrageous official conduct overcomes the will of an individual predisposed only to dealing in small quantities, this contention might bear fruit," Id  at 1300  In <u>Lenfesty</u>, the defendant's claim was rejected not because the court did not recognize the legal substance of the argument, but because the court determined in that case there was sufficient evidence to indicate that the defendant was predisposed to assist the agent in purchasing whatever quantity of drugs he desired.

In another Eight Circuit case, <u>United States v. Stuart</u>, 923 F.2d 607 (8th Cir 1991), cert. denied, 499 U.S. 967  111 S.CT. 1599 (1991), decided shortly after <u>Lenfesty</u>, the court again recognized the possibility of raising sentencing entrapment as an issue at sentencing  <u>United States v. Stuart</u>, 923 F  2d at 614 (1991)

After the Eight Circuit decisions in <u>Lenfesty</u> and <u>Stuart</u>, a similar conclusion was reached by the First Circuit in <u>United States v. Connell</u>, 960 F  2d 191 (1st Cir  1992)  The court recognized the possibility that the government has an opportunity to coerce a

defendant to participate in criminal activity beyond his original intent. Id at 196 As the

First Circuit stated in that case.

> "We can foresee situations in which exploitative manipulation of sentencing factors by government agents might overbear the will of a person predisposed only to committing a lesser crime. This danger seems especially great in cases where the accused' sentence depends in large part on the quantity of drugs or money involved" Id.

The Fourth Circuit has stated that although the defense may be the basis of a due

process challenge, it has refused to test its viability  United States v Jones, 18 F 3d 1145,

1154-1155 (4th Cir 1994 )  The Seventh Circuit is equally ambiguous, "[n]evertheless,

whether a defendant may rely on the doctrine is still an open question in this circuit.  We

cannot say that any appeal raising the sentencing entrapment/manipulation claim would be

legally frivolous " United States v Garcia, 53 F 3d 334 (7th Cir 1995), unpublished

disposition, 1995 WL 131495, See also United States v Okey, 47 F 3d 238 (7th Cir

1995)  (Sentencing manipulation occurs when the government engages in improper

conduct that has the effect of increasing a defendant's sentence )  The Fifth Circuit has

discussed the concept in the context of a due process claim  United States v Tremelling,

43 F 3d 148, 151-152 (5th Cir 1995).

The Ninth Circuit has defined sentencing entrapment by stating, "[s]entencing

entrapment or 'sentence factor manipulation' occurs when 'a defendant, although

predisposed to commit a minor or lessor offense is entrapped in committing a greater

offense subject to grater punishment." <u>United States v Staufer</u>, 38 F 3d 1103, 1106 (9th Cir. 1994), citing <u>United States v Stuart</u>, 923 F 2d 607, 614 (8th Cir 1991)

In the instant case the Government engaged in sentencing entrapment in three ways First the Government purposely did not communicate to Appellant London a specific quantity of cocaine involved in the reverse sting. As stated in the Sentencing Hearing, on January 28, 1998, Appellant London was only present during one conversation when cocaine was discussed and during that discussion only the term "keys' and not a specific quantity of drugs was mentioned The Government's failure to communicate to Appellant London a specific quantity of drugs allowed the Government to , determine the amount of drugs that would be attributed to Appellant London for sentencing purposes Secondly, by failing to communicate a specific quantity, the amount/quantity of drugs used by the Government in the reverse sting and for which he was subsequently sentenced was not foreseeable by Appellant London. Similarly, Appellant London's remote role in the offense further limited his foreseeability Remote involvement in an illegal activity will trigger a reasonable foreseeability inquiry. <u>United States of America v Chalarca</u>, 95 F 3d 239, 244 (2nd Cir. 1996) . The record is void of evidence that Appellant London observed, saw, touched, or handled any drugs The record is also void of evidence that Appellant London observed, saw, touched, or handled fake drugs or drug containers used in the reverse sting The District Court's conclusion of

22

fact that greater that five(5) kilograms of cocaine is attributed to Appellant London is erroneous

A defendant is accountable only for drug quantities "with which he was directly involved" and as to jointly undertaken criminal activity, only for "reasonably foreseeable quantities" U.S.S.G § 1B1 3, comment (n 2) Because Appellant London's involvement was minor and remote he should have been sentenced based upon the amount of payment he received instead of the quantity of drugs the Government used for the reverse sting. The fact that one is convicted of conspiracy narcotics does not necessarily call for application of the jointly criminal activity Guidelines Chalarca, supra.

Thirdly, the Government chose to indict Appellant under 21 U.S.C. § 846 instead of proceeding under 18 U.S.C § 1951 The facts of this case give rise to an indictment of accepting bribes under 18 U.S.C. § 1951 instead of 21 U.S.C. § 846 for which Appellant London was convicted. United States v Clark , 989 F 2d 447 (11th Cir 1997)

The defendant in Clark was a Georgia police officer who was arrested in a reverse sting operation similar to the instant case. Clark was indicted and subsequently pled guilty under 18 U.S.C. § 1951, to accepting a bribe for protecting the transfer of three (03) kilograms of cocaine in a reverse sting, operation Agents gave Clark two cookies containing 69.4 grams of crack cocaine in lieu of cash as payment for his protection This court upheld the defendant's sentence based upon the amount of cocaine he received as payment. The District Court in Clark did not sentence the defendant based upon the three

23

(03) kilograms of cocaine used in the reverse sting but only sentenced the defendant based upon the amount of cocaine he received in lieu of a cash payment for his protection services

The facts of the instant case are strongly similar to <u>Clark</u>. Like <u>Clark,</u> Appellant London provided protection for government agents during a reverse sting operation and therefore should have been sentenced based upon the amount of cash he received instead of the amount of cocaine he was convicted of protecting

Basing Defendant's sentence on the amount of cocaine would be consistent with this circuit's holdings in other cases. In <u>United States v. Tokars,</u> 95 F.3d 1520, 1542 (11th Cir. 1996), this court upheld the District Court's calculation of the base offense level by converting the $160,000 in cash laundered into quantity of cocaine. Adjusting the Defendant's sentence based upon the amount of cash he received would also be consistent with the sentencing guidelines. Application note 12 of U S S G § 2D1 1 allows the court to make an approximation. In making such a determination, the court may consider the price generally obtained for the controlled substance

The record is void of evidence that Appellant London knew or could have foreseen the amount of cocaine that he agreed to protect. A review of the District Court sentencing hearing transcript show that Appellant London was only present at one meeting when cocaine was discussed. (T. 8). During that meeting only keys and not specific

amounts of drugs were mentioned   The District Court's attribution of at six(06)

kilograms to Appellant London is clearly  erroneous

Appellant London received $2,000 00 as payment for providing protection   That

amount of cash is equivalent to less than one 1/4 kilogram of cocaine  Under the

sentencing guidelines, Appellant base offense would have been equivalent to a 33 to 41

month sentence instead of the 206 month sentence Appellant received

Appellant London's sentencing in this case should be reduced in light of the above

arguments and cittions of authorities

.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

**TRIAL COUNSEL'S FAILURE TO PROPERLY RAISE THE
ISSUES OF DOWNWARD DEPARTURES BASED UPON
MININMAL OR MINOR ROLE IN THE OFFENSE  UNDER
U.S.S.G § 3B.1.2 AND ACCEPTANCE OF RESPONSIBILITY
UNDER U.S.S.G. § 3E.1 RENDERED COUNSEL'S ASSISTANCE
CONSTITUTIONALLY INEFFECTIVE**

Familiarity with the structure and basic content of the sentencing Guidelines is a

necessity for trial counsel to give effective representation   United States v  Soto 132 F.3d

56, 59) (D C  Cir. 1997), quoting United States v  Gaviria, 116 F 3d 1498, 1512 (D C.

Cir. 1997) (quoting United States v  Day, 969 F.2d 39, 43 (3d. Cir  1992)  In order to

properly raise the issue of sentencing reduction, Trial Counsel must specifically request an

adjustment under § 3B 1 2  Soto at 59.  Guidelines § 2D1 1(b)(6) provides that "[I]f the

defendant meets the criteria set forth in subdivision (1)-(5) or § 5C1 2 (Limitation of Applicability of Statutory Minimum Sentences in Certain Cases) and the offense level determined above is level 26 or greater, decrease by 2 levels " Similarly trial counsel must specifically request a downward departure under § 3E1.1 for timely providing complete information to the government concerning his own involvement in the offense

### 1. Trial Counsel's Failure To Properly Raise The Issue of a Downward Adjustment Of Appellant's Sentence Under U.S.S.G. § 3B.1.2 As A Minimal Or Minor Participant Rendered Counsel's Assistance Constitutionally Ineffective

Trial counsel's failure to request a downward sentence adjustment under the Sentencing Guidelines provision for minimal or minor participation rendered assistance constitutionally ineffective  Trial counsel's failure to raise these potentially helpful provisions fell outside the professional standards of performance, and the error prejudiced defendant London, who is precisely the type of person covered by the downward adjustment provision

Whether Appellant is entitled to a downward adjustment based upon a minor role in the offense is subject to de novo review. <u>United States v De Varon</u> 136 F 3d 740, 742 (11th Cir. 1998)  Appellant London met all of the criteria set forth in § 5C1 2 subdivisions (1)-(5) and was therefore entitled to a downward adjustment under § 3B.1.2 (1) Appellant does not have more than 1 criminal history point; (2) Appellant did not use

violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense, (3) the offense did not result in death or serious bodily injury to any person, (4) the Appellant was not an organizer, leader, manager, or supervisor of others in the offense .and was not engaged in a continuing criminal enterprise as defined in 21 U.S CT § 848 , and (5) not later that the time of the sentencing hearing, the defendant truthfully provided the Government all information and evidence the defendant had concerning the offense or offenses defendant has complied with this requirement

This Court should vacate Appellant London's current sentence because trial counsel failed to raise the downward adjustment issue and the District Court therefore, failed to make a factual inquiry into Appellant London's role in the offense

    2.    **Trial Counsel's Failure To Properly Raise The Issue of a Downward Adjustment Of Appellant's Sentence Under U.S.S.G. § 3E.1 For Acceptance OF Responsibility Rendered Counsel's Assistance Constitutionally Ineffective**

Appellant London also should have also been entitled to a reduction for acceptance of responsibility under U S S G. § 3E.1, in that he clearly demonstrated acceptance of responsibility for his offense and in going to trial for the purpose of preserving his motion to suppress evidence for purposes of appeal and to clarify the extent of his involvement in the conspiracy as alleged in the indictment. Appellant London admitted the factual

27

elements of his guilt but denied requisite knowledge and intent and under those circumstances a downward departure is available even when the Defendant has gone to trial as along as he has not testified falsely. United States v Fleener, 906 F.2d 914 (6th Cir. 1990), United States v Bigcrow, 898 F.2. 1326 (8th Cir 1990).

U S S G. § 3E1 1 provides:

(a) if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial

(c ) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

The guidelines clearly indicate that, although  Appellant London chose to exercise his right to a trial instead of pleading guilty, he is still  entitled to a reduction consideration based upon acceptance of responsibility.   When a defendant exercises his constitutional right to a trial, a determination that a defendant has accepted responsibility should be based primarily upon pre-trail statements and conduct. Unites States v  Carroll, 6 F 3d 735, 741(11th Cir  1993).

Appellant London's statements to government agents immediately after his arrest show that he accepted full responsibility for his role in the offense. In paragraph one(1), Appellant London states

> " I Officer Coleman did receive money from Walter but he owed me money, that I loaned him, he advise he was giving me the money for following him to ensure that no one would jack him  He advised that he had dope in the car, But I asked him to show it to me, he never would   ."

Evidence of Appellant London acceptance of responsibility is also indicated in statement prepared by the government at the time of London's arrest.

> "London advised that while he was aware that illegal drugs were being transported by various individuals that he provided escort/protective services for, he was not aware of what point and time these individuals were actually in possession of the illegal drugs "

Appellant London further accepted responsibility  at the sentencing hearing  when he stated

> "I messed up, and I wish I could redo it all over again in  (T-22)

Furthermore, the trial court implicitly acknowledged that Appellant London accepted responsibility for his role in the offense when the court at sentencing stated

> "Mr. London, I do appreciate you not making a statement like Mr  Gorham did that defies common sense to me "(T-24).

All of the above excerpts clearly show that Appellant London accepted responsibility for role in the offense. Since there is not a rational basis for failure to argue for a downward adjustment of the base level offense under the guidelines where appropriate, trial counsel was ineffective for not doing so. <u>United States v Headley</u>, 923 F.2d 1079 (3rd Cir. 1991). Counsel's assistance was therefore constitutionally ineffective because he failed to specifically argue for downward adjustments based upon the aforementioned sections of the sentencing guidelines

## CONCLUSION

Based upon the forgoing argument, Appellant London respectfully requests that this Court reverse his conviction or in the alternative vacate the sentence and remand the case for a new sentencing hearing.

## X.    CERTIFICATE OF SERVICE

I hereby certify that I have this date, prior to filing with the Court, served copies of

the above and foregoing BRIEF OF APPELLANT upon the following persons, by

depositing said copies in the United States Mail, with adequate postage affixed thereto,

and addressed as follows:

> Mr. Charles Bourne and
> Ms. Kathryn Aldridge
> Assistant U.S. Attorneys
> Post Office Box 8999
> Savannah, Georgia 31412

This _/8th_ day of December, 1998

Harry B James, III
Attorney for Keith London
State Bar Number 388787

407 Sixth Street
Augusta, Georgia 30901
Telephone: (706) 722-2611
Facsimile   (706) 724-5952

Randolph Frails
Counsel for Appellant
State Bar Number 272729

505 Courthouse Lane
Augusta, Georgia 30901
Telephone.  (706) 828-0075
Facsimile:   (706) 828-0093

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the government's response to London's reply to the government's response in opposition to Keith London's 28 U.S.C. § 2255 motion has been mailed to:

Keith London, Inmate Reg. No. 09595-021
Federal Medical Center
Post Office Box 1600
Butner, NC 27509

This 5th day of February, 2001.

HARRY D. DIXON, JR.
UNITED STATES ATTORNEY

Carlton R. Bourne, Jr.
Assistant United States Attorney
SC Bar No. 007868

U. S. Attorney's Office
100 Bull Street, Suite 201
Savannah, GA 31401
(912) 652-4422